1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - X
         UNITED STATES OF AMERICA,    :   20-CR-00067(ERK)
 3                                    :
                                      :
 4                                    :   United States Courthouse
              -against-              :   Brooklyn, New York
 5                                    :
                                      :
 6                                    :   March 12, 2020
                                      :   2:00 p.m.
 7       SERGEY DENISOFF,             :
                                      :
 8           Defendant.              :
      - - - - - - - - - - - - - - X
 9
              TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
10            BEFORE THE HONORABLE ERIC R. KOMITEE
                UNITED STATES DISTRICT JUDGE
11
                     A P P E A R A N C E S:
12
      For the Government:       RICHARD P. DONOGHUE, ESQ.
13                              United States Attorney
                                Eastern District of New York
14                              271 Cadman Plaza East
                                Brooklyn, New York 11201
15
                                BY:  MICHAEL KEILTY, ESQ.
16                                   ALEXANDER MINDLIN, ESQ.
                                     Assistant United States Attorneys
17
      For the Defendant:        STEVEN GOLDSOBEL
18                              1901 Avenue of the Stars
                                Suite 1750
19                              Los Angeles, CA 90067
20                              BY:  STEVEN GOLDSOBEL, ESQ.
21    Court Reporter:           DENISE PARISI, RPR, CRR
                                Official Court Reporter
22                              United States Courthouse
                                225 Cadman Plaza East
23                              Brooklyn, New York 11201
                                Telephone: (718) 613-2605
24                              E-mail: DeniseParisi72@gmail.com
25    Proceedings recorded by computerized stenography.  Transcript
      produced by Computer-aided Transcription.
```

2

1           (In open court.)

2           THE COURT:  Good afternoon, everybody.  Have a seat,

3    please.

4           THE COURTROOM DEPUTY:  Criminal cause for pleading.

5    USA versus Sergey Denisoff, docket number 20-CR-67.

6           Would you all please state your appearances for the

7    record starting with the Government.

8           MR. KEILTY:  Good afternoon, Your Honor.

9           Mike Keilty and Alexander Mindlin for the

10   Government.

11          THE COURT:  Good afternoon.

12          MR. GOLDSOBEL:  Good afternoon, Your Honor.

13          Steve Goldsobel on behalf of Mr. Denisoff who is

14   present.

15          THE COURT:  Good afternoon.

16          And good afternoon.

17          Okay.  Let me just log in here.

18          So, Mr. Goldsobel, I understand that we are here

19   because your client wishes to waive indictment and enter a

20   plea of guilty to an information.

21          MR. GOLDSOBEL:  That's correct, Your Honor.

22          THE COURT:  Okay.

23          Mr. Denisoff, your attorney advises me that you wish

24   to waive indictment and plead guilty to the information, which

25   is a different kind of charging document in which you are

3

1   charged in this matter pursuant to an agreement with the

2   Government.

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Is that correct?

5           THE DEFENDANT:  That's correct.

6           THE COURT:  So this is a serious decision, and I

7   must be certain that you make it fully understanding your

8   rights and the consequences of your plea.  I'm going to

9   explain to you the rights that you will be giving up by

10  waiving indictment and pleading guilty; and, in addition,

11  before I accept your guilty plea, there are a number of

12  questions I must ask you to establish that this is a valid

13  guilty plea.

14          You guys can be seated.

15          If you don't understand any of my questions today,

16  please say so, and I will reword the question.  It's important

17  that you understand everything that happens here today.

18          If you want to consult with your attorney at any

19  time for any reason, please let me know that, and I will give

20  you as much time as you need to do so.

21          I need you to answer the questions today under oath,

22  so would the clerk, please, swear the defendant.

23          THE COURTROOM DEPUTY:  Would you rise?  Raise your

24  right hand.

25          (Defendant sworn.)

4

1          THE DEFENDANT:  I do.

2          THE COURTROOM DEPUTY:  You may be seated.

3          THE COURT:  Okay.  All right.  So do you understand

4   that you are now under oath and that if you answer any of my

5   questions falsely, your answers could later be used against

6   you in another prosecution for perjury or making a false

7   statement?

8          THE DEFENDANT:  I do.

9          THE COURT:  What is your full name?

10         THE DEFENDANT:  Sergey Denisoff.

11         THE COURT:  Do you want to spell that for the court

12  reporter?

13         THE DEFENDANT:  S-E-R-G-E-Y, last name, D, as in

14  "dog," E-N-I-S-O, double F, as in "Frank."

15         THE COURT:  Okay.  How old are you?

16         THE DEFENDANT:  Thirty-three.

17         THE COURT:  Okay.  How far did you get in school?

18         THE DEFENDANT:  Master's degree, sir.

19         THE COURT:  In what?

20         THE DEFENDANT:  Business administration.

21         THE COURT:  Okay.  I can tell just from the

22  interactions we've had so far that you are clearly able to

23  speak and understand English; right?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And you've been able to communicate --

5

1    or have you, I should say, been able to communicate with your

2    attorney effectively?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Mr. Goldsobel, have you been able to

5    communicate effectively with your client?

6              MR. GOLDSOBEL:  Yes, Your Honor.

7              THE COURT:  These are standard questions.  As you

8    can see, I'm making sure I don't miss anything, so I'm reading

9    off a pretty formal script here.  I have to ask you some

10   questions today that are, in some cases, personal questions,

11   but the point of them is to establish and make a record of the

12   fact that you understand clearly what's happening here today;

13   okay?

14             So have you ever been treated or hospitalized for

15   mental illness?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Are you currently or have you recently

18   been under the care of a doctor or psychiatrist for any

19   reason?

20             THE DEFENDANT:  No.

21             THE COURT:  Have you been treated or hospitalized

22   for addiction, including drug or alcohol addiction?

23             THE DEFENDANT:  No.

24             THE COURT:  Have you taken any drugs, medicine,

25   pills, or alcoholic beverages in the last two days?

6

1          THE DEFENDANT:  No, sir.

2          THE COURT:  Is there any medication that you believe

3    you should be taking that you are not taking?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  Is your mind clear as you sit

6    here today?

7          THE DEFENDANT:  Yes, it is.

8          THE COURT:  And do you understand what's happening?

9          THE DEFENDANT:  I do.

10          THE COURT:  Okay.  Mr. Goldsobel, have you discussed

11    this matter with your client?

12          MR. GOLDSOBEL:  I have.

13          THE COURT:  You believe he understands the rights

14    that he would be waiving by pleading guilty?

15          MR. GOLDSOBEL:  Yes, Your Honor.

16          THE COURT:  And is he capable of understanding the

17    nature of these proceedings?

18          MR. GOLDSOBEL:  He is.

19          THE COURT:  Do you have any doubt as to

20    Mr. Denisoff's competence to plead at this time?

21          MR. GOLDSOBEL:  I don't.

22          THE COURT:  And have you advised him of the maximum

23    and minimum sentence and fine that can imposed in this case.

24          MR. GOLDSOBEL:  Yes, Your Honor.

25          THE COURT:  Have you discussed with him the effect

7

1    of the sentencing guidelines?

2              MR. GOLDSOBEL:  I have.

3              THE COURT:  Okay.

4              Mr. Denisoff, have you been given a copy of the

5    information -- that's the charging document -- pending against

6    you?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And have you fully discussed both the

9    wire fraud conspiracy charge and the forfeiture allegations,

10   as well as the case in general with your attorney?

11             THE DEFENDANT:  Yes.

12             THE COURT:  In paragraph 1 of the information,

13   you're charged with conspiring to commit wire fraud in

14   violation of 18 U.S. Code, Section 1349.

15             The elements of this crime -- when I say "the

16   elements of this crime," I mean the things the Government

17   would have to prove beyond a reasonable doubt if you were to

18   go to trial -- the elements in this case are, number one, that

19   a conspiracy to commit wire fraud existed; and, number two,

20   that you knowingly and intentionally became a member of that

21   conspiracy.

22             And when I say a "conspiracy," what that means is

23   simply a combination or agreement of two or more persons to

24   join together to accomplish some unlawful purpose.  When I say

25   a "conspiracy to commit wire fraud," that means a conspiracy

8

1   to orchestrate a scheme to defraud to get money or property

2   that was furthered by the use of the interstate wires.

3          Do you understand all that?

4          THE DEFENDANT:  I do.

5          THE COURT:  In the forfeiture allegation, the

6   Government states that it intends to seek forfeiture of

7   property that you derived -- you got -- from your alleged

8   participation in the conspiracy to commit wire fraud.

9   Forfeitable property would be any property -- real or

10  personal -- that constitutes or is derived from proceeds that

11  you obtained directly or indirectly as a result of your

12  participation in the alleged conspiracy to commit wire fraud.

13         The forfeiture allegations also state that the

14  Government intends to seek forfeiture of substitute property

15  up to the amount -- the same amount in value of the property I

16  just described; and to require forfeiture of substitute

17  property, the Government would have to show that it is

18  unable -- for some reason -- to locate, identify, or exercise

19  jurisdiction over the actual proceeds that you derived from

20  the conspiracy, and that the substitute property is equivalent

21  in value to those proceeds.

22         Do you understand that?

23         THE DEFENDANT:  I do.

24         THE COURT:  Have you had sufficient time to discuss

25  with your attorney or not whether to plead guilty in this

1   case?

2             THE DEFENDANT:  I've had sufficient time.

3             THE COURT:  And are you fully satisfied with the

4   counsel, representation, and advice given to you in this case

5   by your attorney?

6             THE DEFENDANT:  Yes, sir.

7             THE COURT:  And so I'm now going to explain to you

8   certain rights that you will be giving up if you waive the

9   indictment.

10            Instead of the charges in this case being brought by

11  an indictment, the charges here are being brought against you

12  by what is called an information from the US Attorney.  The

13  difference is, you have a constitutional right, under the US

14  Constitution, not to be charged with a serious crime like you

15  are here today unless a grand jury returns an indictment

16  against you, but you can waive that right only to be charged

17  by indictment by a grand jury and instead consent to being

18  charged by an information that's simply filed by the US

19  Attorney.

20            If you didn't waive indictment, the Government would

21  have to present the case against you to the grand jury and ask

22  it to indict you in order for you to be charged.  A grand jury

23  is composed of at least 16, and not more than 23, persons; and

24  at least 12 grand jurors out of that number must find that

25  there is probable cause to believe that you committed the

10

1  crime with which you are charged before you might be indicted.

2  The grand jury might or might not indict you; but if you waive

3  indictment by the grand jury, the case will proceed against

4  you on the US Attorney's information just as though you had

5  been indicted.

6          Mr. Denisoff, do you understand your right to

7  indictment by a grand jury?

8          THE DEFENDANT:  I do.

9          THE COURT:  And are you willing to waive that right?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Have you discussed this decision with

12 your attorney?

13         THE DEFENDANT:  I have.

14         THE COURT:  Have any threats or promises been made

15 to induce you to waive your right to indictment?

16         THE DEFENDANT:  No.

17         THE COURT:  Are you waiving your right to indictment

18 voluntarily and of your own free will?

19         THE DEFENDANT:  Yes, I am.

20         THE COURT:  And, Mr. Goldsobel, are you aware of any

21 reason that the defendant should not waive indictment?

22         MR. GOLDSOBEL:  I'm not.

23         THE COURT:  Okay.  So, Mr. Denisoff, I'm going to

24 ask you to sign the waiver form in court.

25         THE COURTROOM DEPUTY:  It's on here.  I believe he

11

1    signed it.

2              THE COURT:  All right.  So can we mark that?

3              THE COURTROOM DEPUTY:  You have to sign it now.

4              So, Mr. Denisoff, I have been presented with a

5    document that's entitled, Waiver of an Indictment.

6              Is this your signature on this document?

7              THE DEFENDANT:  Yes, it is.

8              THE COURT:  Let me hand that to you.

9              THE COURTROOM DEPUTY:  Thank you.

10             THE COURT:  The Court finds that the defendant's

11   Waiver of Indictment is knowingly and voluntarily made, and I

12   accept the waiver in this case.

13             Mr. Denisoff, have you reviewed the information?

14             THE DEFENDANT:  Yes, I have.

15             THE COURT:  Have you had time to discuss it with

16   your attorney?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Would you like me to read the

19   information, or do you waive a reading in court?

20             THE DEFENDANT:  I'll waive the reading.

21             THE COURT:  Have you had sufficient time to discuss

22   with your attorney whether or not to plead guilty?

23             THE DEFENDANT:  Yes, I have.

24             THE COURT:  Mr. Goldsobel, I understand that your

25   client wishes to plead guilty to the sole charge in the

1  information pursuant to a plea agreement.

2          And, Mr. Denisoff, your attorney advises me that you

3  wish to plead guilty to the information in which you are

4  charged and that you are doing so pursuant to a plea

5  agreement.

6          Mr. Denisoff, I'm going to now explain certain

7  additional rights that you will be giving up if you enter a

8  plea of guilty.

9          So, first, you have a right to plead not guilty; no

10  one can be forced to plead guilty.

11          Do you understand that?

12          THE DEFENDANT:  I do.

13          THE COURT:  If you plead not guilty, you would have

14  the right under the Constitution and laws of the United States

15  to a speedy and public trial by a jury.

16          Do you understand?

17          THE DEFENDANT:  I do.

18          THE COURT:  At trial, you would be presumed to be

19  innocent, and the Government would have to prove you guilty

20  beyond a reasonable doubt.

21          Do you understand that?

22          THE DEFENDANT:  I do, Your Honor.

23          THE COURT:  You would have the right to the

24  assistance of counsel to your defense.  Mr. Goldsobel would

25  represent you at trial and every other stage of the

13

1  proceeding.

2          Do you understand?

3          THE DEFENDANT:  I do.

4          THE COURT:  You would have the right to see and hear

5  all witnesses and have them cross-examined in your defense.

6          Do you understand that?

7          THE DEFENDANT:  I do.

8          THE COURT:  You would have the right to remain

9  silent; that is, the right not to testify unless you

10 voluntarily chose to do so in your own defense.

11         Do you understand that?

12         THE DEFENDANT:  I do.

13         THE COURT:  Should you decide not to testify or not

14 to put on any evidence at trial, those facts -- the fact that

15 you chose to remain silent -- could not be used against you

16 because the Government has the burden of proof.

17         Do you understand that?

18         THE DEFENDANT:  I do.

19         THE COURT:  You would have the right to compel the

20 attendance of witnesses to testify on your behalf.

21         Do you understand that?

22         THE DEFENDANT:  I do.

23         THE COURT:  And by entering a plea of guilty, and if

24 I accept your plea today, there will be no trial and you will

25 have waived or given up your right to a trial as well as all

14

1    of the rights associated with a trial that I've just

2    described.

3              Do you understand that?

4              THE DEFENDANT:  I do.

5              THE COURT:  If you plead, there will be no right to

6    appeal from the judgment of guilt.  I will simply enter a

7    judgment of guilty on the basis of your guilty plea, and the

8    Government will be freed of any responsibility to prove your

9    guilt.

10             Do you understand that?

11             THE DEFENDANT:  I do.

12             THE COURT:  If you plead guilty, I will have to ask

13   you questions about what you did in order to satisfy myself

14   that you are guilty of the charge to which you seek to plead

15   guilty, and you will have to answer my questions -- you will

16   be waiving your Fifth Amendment right to remain silent -- and

17   you will have to answer my questions and acknowledge your

18   guilt; thus you will be giving up your right not to

19   incriminate yourself.

20             Do you understand that?

21             THE DEFENDANT:  I do.

22             THE COURT:  Mr. Denisoff, do you understand each and

23   every one of the rights I have explained to you?

24             THE DEFENDANT:  I do.

25             THE COURT:  Are you willing to give up your right to

15

1    trial and all of those other rights I have just explained?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Okay.  I understand you are pleading

4    guilty pursuant to an agreement with the Government, and I've

5    marked as Court Exhibit 1 your agreement with the Government

6    pursuant to which you are pleading guilty.

7              Did you sign it?

8              THE DEFENDANT:  I have.

9              THE COURT:  And is this your signature on the last

10   page?

11             THE DEFENDANT:  Yes, it is.

12             THE COURT:  Did you have an opportunity to read and

13   discuss the agreement with your attorney before you signed it?

14             THE DEFENDANT:  Yes, I have, Your Honor.

15             THE COURT:  Did you have sufficient time to review

16   it with your attorney?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Did you understand it?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Mr. Goldsobel, did you have sufficient

21   time to review the plea agreement with your client?

22             MR. GOLDSOBEL:  Yes, Your Honor.

23             THE COURT:  Do you have any questions about the

24   agreement for the Court, Mr. Denisoff?

25             THE DEFENDANT:  I do not.

1        THE COURT:  Does the agreement represent your entire

2   understanding with the Government?

3        THE DEFENDANT:  Yes, it does.

4        THE COURT:  Has anybody made any promise or

5   assurance that is not in the agreement to persuade you to

6   accept this agreement?

7        THE DEFENDANT:  No, sir.

8        THE COURT:  Has anyone threatened you in any way to

9   persuade you to accept this agreement?

10        THE DEFENDANT:  No.

11        THE COURT:  Are you pleading guilty of your own free

12   will because you are, in fact, guilty?

13        THE DEFENDANT:  Yes, I am.

14        THE COURT:  Okay.

15        Mr. Goldsobel, were all formal plea offers from the

16   Government in this case conveyed to Mr. Denisoff?

17        MR. GOLDSOBEL:  Yes.

18        THE COURT:  Okay.  So I've already discussed the

19   charge and the forfeiture allegations against you.  I am now

20   going to tell you about some of the possible penalties for

21   this crime.

22        So, first, under the statute that you have been

23   charged, the maximum term of imprisonment for this crime is

24   20 years; there is no mandatory minimum.

25        Do you understand that?

17

1          THE DEFENDANT:  I do.

2          THE COURT:  Any term of imprisonment might be

3    followed by a term of supervised release, the maximum

4    supervised release term being three years.

5          Supervised release is important.  It refers to the

6    period of time when you will be subject to supervision by the

7    Probation Department after completing any term of

8    imprisonment.  You will have to follow rules of supervised

9    release, and if you violate those rules, you can be sent back

10   to prison without a jury trial to serve an additional term of

11   up to two years without any credit for the time you previously

12   served in prison as a result of your sentence and without any

13   credit for the time you spent on post-release supervision.

14         Do you understand that?

15         THE DEFENDANT:  I do.

16         THE COURT:  You also face a maximum possible fine of

17   $250,000 or twice the gross pecuniary gain derived from the

18   offense -- and when I say "gross pecuniary gain," I mean the

19   amount of money that the conspirators made in this case -- or

20   twice the gross pecuniary loss to persons other than yourself,

21   whichever is greater.

22         In addition, I must order you to pay a mandatory

23   special assessment of $100.

24         Can I ask the Government about restitution here?

25         MR. KEILTY:  Yes, Your Honor.  There are victims in

1  this case, Your Honor.  The victims are aware and have been

2  notified.  We don't have an amount at this point.

3          THE COURT:  Okay.  So the Government is saying there

4  are victims in this case; those victims have had monetary

5  losses.  That means there will be a restitution order.

6  Restitution is mandatory; it can't be reduced based on your

7  financial circumstances or the fact that the victims have, or

8  may be entitled to have, compensation from other sources.

9          So do you understand that as part of your guilty

10  plea you will be ordered to pay restitution to victims in this

11  case?

12          THE DEFENDANT:  I do.

13          THE COURT:  Okay.  You are also subject to

14  forfeiture based on your guilty plea.  Paragraph 6 through 13

15  of the plea agreement indicate that you consent to the

16  forfeiture of $3,000; is that correct?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  I'm going to ask you some questions

19  about the potential immigration consequences of your guilty

20  plea because sometimes pleading guilty to a crime can have

21  implications for somebody's immigration status.

22          Are you a US citizen?

23          THE DEFENDANT:  Yes, I am.

24          THE COURT:  Did you become a US citizen through

25  naturalization or by birth?

1          THE DEFENDANT:  Naturalization.

2          THE COURT:  Okay.  If so, if you are a US citizen

3     through naturalization, then as a result of your guilty plea,

4     you may be subject to something called denaturalization and

5     removal if it is found by an immigration court that your

6     naturalization was procured by concealment or

7     misrepresentation of a material fact.

8          I'm not suggesting at all that that's the case here;

9     I'm just telling you how the law works in this area.

10          So this would include circumstances in which an

11     individual procured citizenship status through a fraud.

12          Do you understand what I mean by that?

13          THE DEFENDANT:  I do.

14          THE COURT:  Okay.  But it may also apply when an

15     individual committed an offense that demonstrates a lack of

16     good moral character within five years immediately preceding

17     the date of filing his application for naturalization.  Any

18     investigation into potential denaturalization as a result of

19     your guilty plea would be the subject of a separate proceeding

20     not before this Court.

21          Are you, nevertheless, willing to plead guilty

22     despite the possible immigration consequences of doing so?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Okay.

25          In addition, because the offense to which you are

1  seeking to plead guilty is a felony offense, if I accept your

2  guilty plea, you will adjudged guilty, and such adjudication

3  may deprive you of valuable civil rights; such as, the right

4  to vote, the right to hold public office, the right to serve

5  on a jury, and the right to possess any kind of a firearm.

6           Do you understand that?

7           THE DEFENDANT:  I do.

8           THE COURT:  Do you understand all of these possible

9  consequences of your plea?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  I'm going to tell you now about

12  the sentencing guidelines.

13          So as I'm sure your attorney has explained to you,

14  there are guidelines that a federal judge must follow in

15  determining the appropriate sentence in your case.  Under the

16  Sentencing Guideline Reform Act of 1984, the United States

17  Sentencing Commission has issued guidelines for judges to

18  follow in determining sentence in a criminal case.  These

19  guidelines are advisory, and I will consider them, along with

20  the particular facts and circumstances of your case, and all

21  of the sentencing factors set forth in a federal statute;

22  namely, 18 U.S. Code, Section 3553(a), in determining your

23  sentence.

24          Mr. Denisoff, have you and your attorney discussed

25  how the advisory sentencing guidelines might apply to your

21

1    case?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Has the Government estimated what the

4    guidelines range is likely to be in this case?

5              MR. KEILTY:  We have, Your Honor.

6              THE COURT:  And does the defense have a different

7    estimate?

8              MR. GOLDSOBEL:  Yes, Your Honor, because, as the

9    allocution will indicate, Mr. Denisoff's participation was a

10   very narrow period of time, and that should be the period

11   applicable to the guidelines calculation; but, at the same

12   time, we understand that the Government, based upon the

13   information, has given us a guidelines calculation in terms of

14   what the maximum is.  I don't disagree with their guidelines

15   calculation, as far as the scope of the information; but in

16   terms of Mr. Denisoff's participation, I believe the

17   guidelines will have a much narrower or lower offense level.

18             THE COURT:  Okay.  Are you describing a dispute of

19   fact, or are you describing just a dispute about how the

20   guidelines should be applied in this case?

21             MR. GOLDSOBEL:  The guidelines to be applied based

22   upon the narrow period of time in which Mr. Denisoff

23   participated in the conspiracy.

24             THE COURT:  Okay.

25             MR. KEILTY:  Your Honor, the defendant has not

22

1    stipulated to the guidelines, so he's free to argue at a later

2    date.

3          THE COURT:  Understood.  Understood.

4          So, Mr. Denisoff, what is important for you to

5    understand here is that the Government may have one estimate

6    of how the guidelines should apply, your attorney may have a

7    different estimate of how the guidelines should apply, but

8    both of those estimates -- either or both of those

9    estimates -- could be wrong.  I will not be able to determine

10   the advisory guideline range for your case until after a

11   Presentence Report has been prepared and you and the

12   Government both have had an opportunity to read it and

13   challenge the reported facts and the application of the

14   guidelines that's put forward in that Presentence Report by

15   the probation officer.

16         Do you understand that?

17         THE DEFENDANT:  I do.

18         THE COURT:  So the sentence that I impose may be

19   different than any statistic your attorney may have given you.

20         Do you understand?

21         THE DEFENDANT:  I do.

22         THE COURT:  Even after determining the advisory

23   guideline range, I have the authority in some circumstances to

24   depart upward or downward from the advisory guideline range

25   and will look at other sentencing factors under 18 U.S. Code

1    3553(a) that could result in a sentence that is either greater

2    or lesser than the advisory guidelines sentence.

3              Do you understand?

4              THE DEFENDANT:  I do.

5              THE COURT:  As you sit here today, there is no

6    guarantee as to a particular guideline range.  I will have to

7    determine that range, and I am not required to sentence you

8    within that range.

9              Do you understand?

10             THE DEFENDANT:  I do Your Honor.

11             THE COURT:  If the ultimate sentence I impose is

12   different than the one that you hope for or expect, you cannot

13   take your plea back.

14             Do you understand?

15             THE DEFENDANT:  I do.

16             THE COURT:  And you should understand that there is

17   no parole in the federal system, and if you are sentenced to a

18   prison term, you will not be released on parole.

19             Do you understand that?

20             THE DEFENDANT:  I do.

21             THE COURT:  There's also an appeal waiver.  You are

22   waiving your right to appeal your sentence as part of your

23   plea today.  Under some circumstances, you or the Government

24   might have the right to appeal any sentence that I impose, but

25   by entering into this plea agreement and entering a plea of

1   guilty, you are agreeing to waive or give up your right to

2   appeal or collaterally attack any part of your conviction or

3   sentence, except on the basis of ineffective assistance of

4   counsel, so long as I sentence you to 87 months or less in

5   jail.

6          Do you have any questions about the rights that you

7   are giving up, the punishments you may face, the agreement,

8   the nature of the charges, or anything else I have discussed

9   with you now?

10          THE DEFENDANT:  I do not, Your Honor.

11          THE COURT:  Okay.  Are you ready to plead guilty,

12   Mr. Denisoff?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Mr. Goldsobel, do you know of any reason

15   why your client should not plead guilty?

16          MR. GOLDSOBEL:  No, Your Honor.

17          THE COURT:  Mr. Denisoff, what is your plea to the

18   charge in paragraph 1 of the information charging you with

19   conspiracy to commit wire fraud?

20          THE DEFENDANT:  I plead guilty, Your Honor.

21          THE COURT:  Are you making the plea of guilty

22   voluntarily and of your own free will?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Has anyone threatened or forced you to

25   plead guilty?

1        THE DEFENDANT:  No.

2        THE COURT:  Other than the agreement with the

3   Government, has anyone made any promise that caused you to

4   plead guilty?

5        THE DEFENDANT:  No.

6        THE COURT:  Has anyone made any promises to you --

7   promises -- as to what your sentence will be?

8        THE DEFENDANT:  No, sir.

9        THE COURT:  Okay.  So in federal court, the Court is

10  not allowed to accept a plea of guilty unless the Court has a

11  basis to conclude that the defendant is, in fact, guilty of

12  the crime to which he or she is pleading guilty; therefore,

13  would you explain in your own words what makes you guilty of

14  conspiracy to commit wire fraud?

15       THE DEFENDANT:  Yes, sir.

16       From approximately June 2015 to December 2015,

17  Plexious, a company in which I was an owner, purchased traffic

18  relating to digital advertising from a company that I

19  understood was controlled by Alex Zhukov.  Zhukov contacted

20  Plexious and offered to provide us with digital traffic.

21  After contacting with -- contracting with Zhukov, I learned

22  that Zhukov was using computer servers to generate fictitious

23  traffic.  Plexious paid for the fictitious traffic and sold

24  the traffic to other firms, which in turn had relationships

25  with advertising firms.  I earned approximately $3,000 from

1   doing business with Zhukov.

2          THE COURT:  Does the Government have any questions

3   about the scope of the allocution?

4          MR. KEILTY:  Your Honor, I would just proffer that

5   these communications between the defendant and his

6   co-conspirators used the interstate wires.

7          THE COURT:  Do you understand what the Government

8   just said?

9          THE DEFENDANT:  No, Your Honor.

10         THE COURT:  So one of the elements of wire fraud is

11  that the interstate wires are used.  That's one of the reasons

12  why this becomes a federal crime instead of a state crime, and

13  the Government basically said that this crime involved

14  interstate wire transmissions.

15         THE DEFENDANT:  I understand.

16         THE COURT:  It could be over fiberoptic cable or

17  telephone wires or otherwise.

18         THE DEFENDANT:  I understand that.

19         THE COURT:  Do you agree?

20         THE DEFENDANT:  I do.

21         MR. KEILTY:  Your Honor, I would also, if I may --

22         THE COURT:  Sure.

23         MR. KEILTY:  -- with respect to venue, the

24  Government would also, at trial, prove facts that certain

25  wires passed through the Eastern District of New York.

1          THE COURT:  Okay.

2          Do you understand what the Government just said

3     about venue?

4          THE DEFENDANT:  I do.

5          THE COURT:  That's why we are here instead of in a

6     different federal district court.

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Do you agree with the contention that

9     the wires involved this district?

10         MR. GOLDSOBEL:  We don't have any reason to disagree

11    with the Government that at trial the Government would be able

12    to establish that fact.

13         THE COURT:  Understood.

14         We talked already about victim notification.  I take

15    it the Government will, before sentencing, inform any

16    appropriate victims of that proceeding.

17         MR. KEILTY:  Yes, Your Honor.

18         THE COURT:  Based on my observations of the

19    defendant and his demeanor in court, his answers to my

20    questions and the representations of his counsel, I find that

21    the defendant is fully competent and capable of entering an

22    informed plea, aware of the nature of the charges and the

23    consequences of the plea, and that the plea of guilty is

24    knowing and voluntary and supported by an independent basis in

25    fact containing the essential elements of the offense.

28

1        I therefore accept the plea of guilty to the charge

2    in paragraph 1 of the information.

3        Mr. Denisoff, a written Presentence Report will be

4    prepared by the probation officer to assist the Court at

5    sentencing.  The Presentence Report is a very important

6    document and can take the Probation Department some time to

7    prepare.  There may be what feels like a gap to you in the

8    lead-up to your sentencing where nothing seems to be

9    happening.  That may be just the case that the Probation

10   Department is working very hard on the PSR, which is a long

11   and complex document.

12       The Probation Department is an arm of the court --

13   they do not work for the defense counsel or the Government;

14   they work for the Court -- and the aim of the Presentence

15   Report is to assist the Court in sentencing.  You will be

16   asked to give information for the report; and, if you wish,

17   you can have your attorney present for any interview with the

18   probation officer.

19       Mr. Goldsobel, do you wish to be present for any

20   interview?

21       MR. GOLDSOBEL:  Yes.

22       THE COURT:  Okay.  I understand we may be talking

23   about something that happens relatively far off in the future.

24       Mr. Denisoff, you and your attorney will have an

25   opportunity to review the Presentence Report and to file any

1  objections to the report before sentencing; and you and your

2  counsel will have the opportunity to speak at the sentencing

3  hearing.  The date for sentencing is June 25th, 2020, at

4  10:00 a.m.

5          Do you understand that?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  Mr. Denisoff, just a word about bail.

8          So bail is continued.  You are required to appear

9  for sentencing here in Courtroom 6G, 225 Cadman Plaza East in

10 Brooklyn, New York.  The failure to appear at the scheduled

11 time and place is a criminal offense for which you could be

12 sentenced to imprisonment.

13         In addition, all conditions on which you have been

14 released up until now, absent any application from the

15 Government, shall continue to apply; and the penalties for

16 violating those conditions, you should know, shall be severe.

17         MR. GOLDSOBEL:  Your Honor, this is probably a good

18 time to give the Court a heads-up that I've been conferring

19 with the Government regarding one of the conditions of

20 release, which is a drug-testing condition that was imposed

21 relating to a report of prior marijuana use before

22 Mr. Denisoff's arrest, and that's been requiring daily phone

23 calls.  He's had testing; he's tested negative every time.

24 Pretrial in Los Angeles does not oppose removal of the

25 condition.  I understand the Government doesn't oppose it

30

1   either.  In light of communicating with Pretrial here, we are

2   going to be submitting a letter to the Court tomorrow for

3   removal of that condition.

4              THE COURT:  Sounds good.

5              MR. GOLDSOBEL:  Thank you.

6              THE COURT:  Anything else from the Government?

7              MR. KEILTY:  No, Your Honor.

8              Thank you.

9              THE COURT:  Anything else from the defense?

10             MR. GOLDSOBEL:  No, Your Honor.

11             THE COURT:  Okay.  Then we're adjourned.

12             Thank you, everyone.

13             (Matter concluded.)

14

15                    *     *     *     *     *

16

17  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
18

19     /s/ Denise Parisi              December 7, 2020

20  _____      _____
       DENISE PARISI                      DATE

21

22

23

24

25